# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KINCHASA JACKSON, on her own behalf
of her children Y.J. and K.J., et. al.,

      Plaintiffs

          v.

POCONO MOUNTAIN SCHOOL
DISTRICT, et. al.,

      Defendants

CIVIL ACTION NO. 3:10-CV-1171-ARC

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss (Doc. 5) Plaintiffs' Complaint (Doc. 1). For the reasons discussed below, the Motion will be granted.

## BACKGROUND

On June 2, 2010, Plaintiffs filed their Complaint against Defendants. (Doc. 1.) In their Complaint, Plaintiffs allege the following. Defendant Pocono Mountain School District ("School District") granted a charter to the Plaintiff Pocono Mountain Charter School ("Charter School") on February 19, 2003. (Doc. 1. ¶ 11.) The Charter School is publicly-funded, organized and existing under Pennsylvania Charter School Law. (Id. ¶ 5.) The school currently has three-hundred and twenty-five students (325), more than ninety percent (90%) of which are African-American, Hispanic, or a member of another minority group. (Id. ¶ 17.) A majority of the Board of Directors of the Charter School are African-American (Id. ¶ 18), and several members of the Board of Trustees and the CEO of the Charter School belong to Shawnee Tabernacle Church. (Id. ¶ 19.) The Charter School provides its students with an individualized curriculum, a high staff to student ratio, and small class sizes. (Id. ¶ 21.)

While the Charter school has performed well and its students have made significant economic progress, the School District is in contrast one of the lowest-performing school districts in the state of Pennsylvania. (Id. ¶ ¶ 22-24.)

When the Charter School's charter was renewed in 2006, sixty-five (65) conditions were attached to the charter, which the Charter School had to agree to in order to obtain the renewal. (Id. ¶ 31.) The charter was renewed in 2006 but now the School District seeks to revoke it. (Id.) In contrast, the Evergreen Charter School ("Evergreen"), the student population of which is predominately Caucasian, was only required to agree to thirty (30) conditions when its charter was up for renewal. (Id. ¶ ¶ 33-34.)

In approving the original charter and its renewal, the School District has treated the Charter School differently then it treated Evergreen, primarily by making the Charter School comply with more onerous conditions than Evergreen, based on the School District's racial and religious animus to the Charter School. (Id. ¶ 36.) These conditions include: 1) dictating the composition of the Board and what church the Board members can attend; 2) imposing overly detailed requirements regarding Adequate Yearly Progress, truancy practices, and the Assessment Plans; 3) requiring the Charter School to prepare a Professional Development Plan for its faculty; and 5) requiring documentation of staff shared by the Charter School and Shawnee Tabernacle. (Id.) The School District has also treated the Charter School differently from Evergreen by, among other things, donating equipment to Evergreen and not to the Charter School, submitting frequent requests for federal monitoring of the Charter School, and providing technical assistance on the public bidding process to Evergreen and not to the Charter School. (Id. ¶ 37.)

On May 21, 2008, the School District instituted charter revocation proceedings against

2

the Charter School for alleged violations of the Pennsylvania Charter School Law. (Id. ¶ 38.) This proceeding was initiated in bad faith, since some of the allegations were baseless, some were made regarding matters that were known to the School District at the time of the 2006 renewal of the Charter School's charter and not objected to, and some were based on issues that only happened *after* the revocation proceeding was initiated. (Id.)

The impetus for the School District's particularly harsh treatment of the Charter School is a prior bad experience the School District had with another minority-run charter school, the Pocono School for Excellence ("Excellence"). Excellence was closed in 2003-4 do to financial irregularities and poor academic performance. However, the Charter School has no connection or relationship with that school. (Id. ¶ ¶ 39-42.)

The School District has also made repeated complaints to the Pennsylvania Department of Education regarding the Charter School's alleged violations of the Individuals with Disabilities Education Act, and made this a ground for having the Charter School's charter revoked, despite the fact that an investigation was carried out by the state and the Charter School was found to be in compliance with all requirements. (Id. ¶ ¶ 49-52.) The Department of Education also received an anonymous letter on February 22, 2010 claiming that Charter School administrators had coached students in changing their answers on the Pennsylvania System of School Assessment test. After receiving the results of an internal investigation into this charge, the Department of Education found the allegation to be unfounded. (Id. ¶ 54.) As a result of the well-publicized allegations against the Charter School, enrollment has dropped dramatically, leading to a significant financial loss for the school. (Id. ¶ 55.)

In their Complaint, Plaintiffs claim violation of Title VI of the Civil Rights Act of 1964

(Count I); violation of their First Amendment rights (Count II); violations of the Equal Protection and Due Process Clauses (Count III-IV); violations of Article I, § § 3 and 26 of the Pennsylvania Constitution (Counts V-VI); and Defamation (Count VII). Defendants filed their Motion to Dismiss on August 13, 2010. (Doc. 5.) The Motion has been fully briefed and is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the

complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### A. First Amendment, Due Process, and Equal Protection Claims under § 1983

Plaintiff Pocono Mountain School District's First Amendment, Due Process, and Equal Protection claims brought under § 1983 will fail because the Charter School is a political subdivision not entitled to relief under the statute.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.

Although Defendants have not pointed to any cases dealing with suits brought by political subdivisions under § 1983 in the Third Circuit, and this Court's research has not yielded any, a number of Circuits, including the Second, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh, have all held that a political subdivision may not bring a federal suit against its parent state or its subdivisions on rights secured through the Fourteenth Amendment or other constitutional provisions. *See, e.g., South Macomb Disposal Auth. v. Twp. of Washington*, 790 F.2d 500 (6th Cir. 1986) (finding that a municipal corporation could not sue another township); *City of Moore, Okl. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 512 (10th Cir. 1983) (finding city lacked standing to challenge zoning statute as a violation of equal protection clause); *Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980) (ruling that political subdivision couldn't challenge land use regulations on constitutional grounds when defendant was political subdivision of the state); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973) (ruling that city could not challenge state law on constitutional grounds). The logic behind this view was first enunciated in a much earlier United States Supreme Court decision which stated: "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to

6

the will of its creator." *Richardson*, 473 F.2d at 929 (quoting *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40 (1933)).

Plaintiff Charter School argues that it is not a "political subdivision" and should therefore be allowed to bring suit under § 1983 against the Defendants. However, 24 P.S. § 17-1714-A of the Charter School Law explicitly states:

> A charter school established under this act is a body corporate and shall have all the powers necessary or desirable for carrying out its charter including, but not limited to, the power to . . . [s]ue and be sued, but only to the same extent and upon the same condition that *political subdivisions* and local agencies can be sued.

24 P.S. § 17-1714-A (emphasis added).

Applying this rule to the case at hand, Plaintiff Pocono Mountain Charter School's Due Process and Equal Protection claims brought under § 1983 will be dismissed (Counts III-IV), along with their First Amendment claim also brought under § 1983 (Count II), on the same grounds.

## B.  Pennsylvania Constitution Claims

Plaintiffs claims under the Pennsylvania Constitution fail because there is no private cause of action for damages under the state constitution.

Article I, Section 3 of the Pennsylvania Constitution states:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Pa. Const. Art. I, § 3.

Article I, Section 26 of the Pennsylvania Constitution states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Const. Art. I, § 26.

However, "[t]o date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Klatch-Maynard v. ENT Surgical Assoc.*, No. 3:CV-09-1963, 2009 WL 5743182, at *7 (M.D. Pa. Dec. 9, 2009) (quoting *Bowers v. City of Phila.*, No. 06-3229, 2008 WL 5210256, at *8 (E.D. Pa. Dec. 12, 2008) (internal citations omitted). As a result, Plaintiffs' causes of action (Counts V-VI) under the Pennsylvania Constitution will be dismissed for failing to state a claim.

### C. Title VI of the Civil Rights Act of 1964

Plaintiffs Title VI claim against Defendants will also be dismissed for failing to state a claim.

Title VI of the Civil Rights Act of 1964 states:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Regarding the Charter School's Title VI claim, while there is no case on point in the Third Circuit addressing the issue, an Eleventh Circuit case is helpful. In *U.S. v. State of*

*Ala.*, 791 F.2d 1450 (11th Cir. 1986), a predominately black college intervened in a lawsuit against the Alabama Board of Education, alleging it operated a dual system of racially segregated higher education.  On appeal, the Eleventh Circuit stated:

> Title VI provides for a comprehensive scheme of administrative enforcement, and the Supreme Court has implicitly recognized a private right of action for individuals injured by a Title VI violation.  Absent any indication of Congressional intent to grant additional rights under this statute to non-private state subdivisions against the state itself, we decline to infer such a right of action by judicial fiat.

*State of Ala*., 791 F.2d at 1456.

This Court finds the logic of this argument persuasive.  However, Plaintiffs contend that while "person" is not defined in Title VI, Title VII – which deals with unlawful employment practices – defines the term very broadly, to include corporations, unincorporated organizations, and government agencies. 42 U.S.C. § 2000e.  In examining Title VII, it is clear from the language of the statute that "person" is defined broadly precisely because the "person" language applies to *defendants* in Title VII actions, while the terms "individual" and "employees" – and not "persons" – apply to *plaintiffs*.  For these reasons, this Court will dismiss the Charter School's Title VI claim (Count I).

Plaintiffs' Title VI claims fail because Plaintiffs have failed to allege any facts showing how the Defendants discriminated against them.  While notice-pleading standards in the federal courts are quite liberal, a plaintiff still needs to show a "plausible claim for relief." *Iqbal,* 129 S. Ct. At 150.  Here, the Plaintiffs have alleged that the Defendants treated the Charter School differently by placing onerous conditions on its charter renewal that it did not on the other, predominately Caucasian charter school in the district and also by attempting

9

to revoke the Charter School's charter with unsubstantiated accusations.  None of these

alleged actions, however, targeted or were aimed at the students of the school.  As a result,

the individual Plaintiffs' Title VI claims (Count I) will be dismissed.

### D. Defamation

Finally, the Charter School's defamation claim against the Defendants will be also

be dismissed because the Plaintiffs' have not sufficiently pled defamation, and the school

is a political subdivision of the state and therefore cannot be libeled.

> The elements of a *prima facie* case of defamation are: (1) [t]he defamatory
> character of the communication. . . (2) [i]ts publication by the defendant . . . (3)
> [i]ts application to the plaintiff . . . (4) [t]he understanding by the recipient of its
> defamatory meaning . . . (5) [t]he understanding by the recipient of it as
> intended to apply to the plaintiff. . . (6) [s]pecial harm resulting to the plaintiff
> from its publication . . (7) [a]buse of a conditionally privileged occassion.

*Reager v. Williams*, No. 3:08cv2035, 2009 WL 3182053 (M.D. Pa. Sept. 25, 2009) (quoting

*Joseph v. Scranton Times L.P.*, 959 A.2d 32 (Pa. Super. Ct. 2008)).

Under Fed. R.Civ. P. Rule 8, to bring a claim for libel in federal court, only notice

pleading is required to survive a Motion to Dismiss.  In *Roskos v. Sugarloaf Twp.*, 295

F.Supp. 2d 480, the Middle District of Pennsylvania found:

> While Plaintiffs do not specifically identity the words spoken by Defendant
> Fisher, they allege she made "false statements about Plaintiffs committing the
> aforesaid criminal offenses" . . .Plaintiffs also assert that the statements were
> made at the magisterial hearings. . . We conclude that these and other
> assertions made in Plaintiffs' defamation count give sufficient notice to satisfy
> federal pleading requirements.

*Roskos*, 295 F. Supp. 2d at 492.

Here, Plaintiffs argue that they have met the notice-pleading requirements to state a

claim for defamation.  However, taking the Plaintiffs allegations as true (Doc. 1 ¶ ¶ 50-54),

unlike in *Roskos*, the Plaintiffs have not identified *who* made the statements, *when* they were

made, or *where* they were made.

Putting the pleading standard for libel suits in federal court aside for the moment, there is also the long-standing doctrine that libel actions cannot be brought by the government or its agencies. *NY Times Co. v. Sullivan*, 376 U.S. 254 (1964). "A governmental entity is incapable of being libeled . . .[T]o permit such a lawsuit to be maintained . . . would plainly violate the First Amendment of the Constitution." *City of Phila. v. Wash. Post. Co.*, 482 F. Supp. 897, 899 (E.D. Pa. 1979).

As a result, even if the allegation was sufficient for pleading purposes, which it is not, the claim would be barred on the grounds of the long-held principle that government entities cannot be libeled.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 5) will be granted. Since all the claims were dismissed, this Court does not find it necessary to address the immunity arguments raised by the Defendants. An appropriate order follows.


 11/23/10                                          /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KINCHASA JACKSON, on her own behalf
of her children Y.J. and K.J., et. al.,

      Plaintiffs

          v.

POCONO MOUNTAIN SCHOOL
DISTRICT, et. al.,

      Defendants

CIVIL ACTION NO. 3:10-CV-1171-ARC

(JUDGE CAPUTO)

## ORDER

    **NOW**, this   23rd   day of November, 2010, **IT IS HEREBY ORDERED** that

Defendants' Motion to Dismiss (Doc. 5) is **GRANTED**.

                /s/ A. Richard Caputo
                A. Richard Caputo
                United States District Judge