**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POCONO MOUNTAIN CHARTER SCHOOL, *et al.*, | CIVIL ACTION NO. 3:CV-10-1171 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| POCONO MOUNTAIN SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss (Doc. 34) Plaintiffs' First Amended Complaint.  Plaintiffs, the Pocono Mountain Charter School, students enrolled at the school, and the parents of the enrolled students, commenced this action alleging violations of Title VI of the Civil Rights Act of 1964, the United States Constitution, and the Pennsylvania Constitution.  Defendants, the Pocono Mountain School District and employees and members of the school district's board of education, have moved to dismiss the action in its entirety for lack of jurisdiction and failure to state a claim upon which relief can be granted.

The motion to dismiss will be granted in part and denied in part.  Because the relationship between a charter school and school district is analogous to that of a municipality and its creator, Pocono Mountain Charter School's 42 U.S.C. § 1983 will be dismissed.  Moreover, Plaintiffs' cause of action for violation of Article I, Section 3 of the Pennsylvania Constitution will be dismissed because the claim, as alleged, seeks to assert the constitutional rights of individuals that are not plaintiffs in this litigation.  However, because Plaintiffs have sufficiently stated claims under Title VI of the Civil Rights Act of 1964 and Article I, Section 26 of the Pennsylvania Constitution, Plaintiffs will be permitted to proceed on Counts I and VI of the First Amended Complaint.

## I. Background

The facts as alleged in the First Amended Complaint are as follows:

Plaintiffs are the Pocono Mountain Charter School (the "Charter School") and students and the parents of students enrolled in the Charter School. (*Am. Compl.*, ¶ 1.) The Charter School is a publically funded charter school organized and existing under the Pennsylvania Charter School Law, 24 Pa. Stat. Ann. §§ 17-1701, *et seq*. (*Id*. at ¶ 5.) Defendant Pocono Mountain School District (the "District") is a public school district organized and existing under the Public School Code, 24 Pa. Stat. Ann. §§ 1-101, *et seq*. (*Id*. at ¶ 7.) The named Individual Defendants are the District's superintendent, former superintendent, members of the District's Board of Education, and former members of the Board of Education. (*Id*. at ¶¶ 8-11.)

The Charter School was established as a public charter school in 2003. (*Id*. at ¶ 51.) The Charter School's initial charter was approved by the District the same year. (*Id*.) Currently, three-hundred and sixty-nine (369) students are enrolled in the Charter School. (*Id*. at ¶ 52.) Over ninety percent (90%) of these students are African-American, Hispanic, or of other minority groups. (*Id*.) Additionally, the composition of the majority of the Charter School's board of directors is African-American. (*Id*. at ¶ 53.) The former Chief Executive Officer of the Charter School is an associate pastor at the Shawnee Tabernacle Church. Several members of the Charter School's Board of Trustees attend worship services at the Shawnee Tabernacle Church. (*Id*. at ¶ 54.)

The Charter School fulfills its commitment to each student's individual needs by providing an individualized curriculum, a high staff to student ratio, and small class sizes. (*Id*. at ¶ 55.) The Charter School affords its students more immediate support and guidance than they would otherwise receive in a large, traditional public school, and the students are also provided with opportunities for service and leadership. (*Id*.) The students at the

Charter School have made significant academic progress, and the Charter School has earned various progress and achievement awards and accolades. (*Id*. at ¶¶ 56-57.)

Conversely, the District is one of the lowest-performing school districts in the Commonwealth of Pennsylvania. (*Id*. at ¶ 58.)  In that regard, the District has failed to assure that its students make Adequate Yearly Progress under the No Child Left Behind Act. (*Id*.)

The initial charter granted by the District to the Charter School was for a period of three years, with an expiration date of June 2006. (*Id*. at ¶ 63.)  On June 4, 2006, a five-year renewal was granted to the Charter School. (*Id*. at ¶ 65.)  However, in order to obtain renewal of its charter, the Charter School was required to agree to sixty-five (65) conditions. (*Id*. at ¶ 65.)

The District has also approved a charter for the Evergreen Charter School ("Evergreen"). (*Id*. at ¶ 66.)  Evergreen's student population is predominantly Caucasian, with approximately only fifteen percent (15%) minority students. (*Id*. at ¶ 67.)  Unlike the Charter School's charter, Evergreen's charter contains only thirty (30) conditions. (*Id*. at ¶ 68.)  And, these thirty (30) conditions are less restrictive of Evergreen's operations. (*Id*.)

In the initial approval of the Charter School's charter, as well as during its renewal, the District imposed more onerous conditions on the Charter School than Evergreen due to religious and/or racial animus and bias. (*Id*. at ¶ 70.)  These conditions include: (1) dictating the composition of the board and the church members may attend; (2) imposing overly detailed requirements regarding Adequate Yearly Performance, truancy practices, and Assessment Plans; (3) requiring preparation of a Professional Development Plan for faculty; (4) imposing onerous transportation arrangements; and (5) requiring documentation of staff/personnel shared by the Charter School and Shawnee Tabernacle Church. (*Id*. at ¶ 70.)  The District has also treated the two schools differently by, among other things,

donating equipment to Evergreen, assigning a liaison that attends every Evergreen Board meeting but has never attended a Charter School board meeting, referring high performing students to Evergreen, providing technical assistance to Evergreen, and assisting Evergreen in its purchase of buses. (*Id*. at ¶ 71.)

On May 21, 2008, the District instituted charter revocation proceedings against the Charter School for alleged violations of the Charter School Law. (*Id*. at ¶ 72.)  These proceedings were initiated without evidence and in bad faith. (*Id*. at ¶ 73.)

Subsequently, the Charter School appealed to the Charter Appeal Board ("Appeal Board").  On September 27, 2011, the Appeal Board voted 5-2 to reverse the decision of the District's Board of School Directors. (*Id*. at ¶ 74.)

The harsh treatment of the Charter School has been admitted by the District to be related to its prior "bad experience" with the Pocono School for Excellence ("Excellence"), a charter school that was predominantly minority-run. (*Id*. at ¶ 75-76.)  Excellence was closed in 2003-2004 because of financial irregularities and poor academic performance. (*Id*. at ¶ 75.)  The Charter School, however, has no connection to Excellence. (*Id*. at ¶ 78.)

The District has also submitted multiple, baseless complaints to the Pennsylvania Department of Education alleging deficiencies in the Charter School's performance. (*Id*. at ¶¶ 84-88.)  Yet, on every occasion, the Department of Education found the complaints without merit. (*Id*.)

As a result of the District's actions, the Charter School's enrollment has dropped by nearly one hundred (100) students, resulting in an annual loss of revenue for operations of approximately one million dollars ($1,000,000.00). (*Id*. at ¶ 92.)

Based on the foregoing events, the Charter School initiated this action in June 2010 asserting claims for violations of Title VI of the Civil Rights Act of 1964, the First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment,

4

Article I, Sections 3 and 26 of the Pennsylvania Constitution, and defamation. (*Compl.*)  On November 23, 2010, Defendants' motion to dismiss the complaint was granted and the action was dismissed in its entirety. (Doc. 26.)

Thereafter, Plaintiffs appealed the dismissal of their claims to the United States Court of Appeals for the Third Circuit. (Docs. 27, 28.)  The Third Circuit affirmed the decision in part, and reversed and remanded in part for further proceedings. *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681 (3d Cir. 2011).  Specifically:

> We will affirm the District Court's dismissal of the individual plaintiffs' Due Process claim, the Charter School's Title VI claim, and all plaintiffs' claims for monetary damages under the Pennsylvania Constitution and for defamation. Because the District Court failed to address plaintiffs' claims for injunctive relief under the Pennsylvania Constitution, we will remand for it to consider whether those claims have merit. We also will vacate the portion of the District Court's order dismissing the individual students' Title VI claim and direct the Court to grant the individual plaintiffs leave to amend their complaint regarding their Title VI claims on remand. Finally, we will vacate the Court's dismissal of plaintiffs' § 1983 claims, reverse its holding that, under the Pennsylvania Charter School Law, the Charter School is a political subdivision, and remand for the District Court to determine the Charter School's capacity to sue under § 1983.

*Id*. at 684.

In accordance with the Third Circuit's mandate, Individual Plaintiffs were given leave to file an amended complaint. (Doc. 32.)  In the First Amended Complaint, Plaintiffs assert six causes of action.  Specifically, Individual Plaintiffs allege that Defendants violated Title VI of the Civil Rights Act of 1964 (Count I). (*Am. Compl.*, ¶ 95.)[1]  In addition, the Charter

---

[1]     Individual Plaintiffs appealed only the dismissal of their § 1983 Due Process, Title VI, and Pennsylvania Constitution claims. *See Pocono Mountain Charter Sch.*, 442 F. App'x at 685.  The Third Circuit affirmed the dismissal of the Due Process claim and the claims for monetary relief under the Pennsylvania Constitution. *See id*. at 684.  However, the Third Circuit also directed that Individual Plaintiffs be permitted to amend their Title VI claim, and the Court consider whether Plaintiffs' claims for injunctive relief under the Pennsylvania Constitution have merit. *See id*.  Thus, Individual Plaintiffs' remaining claims are limited to those under Title VI (Count I) and the Pennsylvania Constitution (Counts V-VI).

School asserts claims under 42 U.S.C. § 1983 for violations of the First Amendment (Count II), the Equal Protection Clause of the Fourteenth Amendment (Count III), and the Due Process Clause of the Fourteenth Amendment (Count IV). (*Id.* at ¶¶ 96-98.)  Lastly, all Plaintiffs seek injunctive relief under Article I, Sections 3 and 26 of the Pennsylvania Constitution (Counts V-VI). (*Id.* at ¶¶ 99-100.)

Defendants, on May 29, 2012, moved to dismiss the Amended Complaint in its entirety.  Now, as Defendants' motion to dismiss has been fully briefed, it is ripe for disposition.

## II. Legal Standard for a 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, - - - F.3d - - - , 2012 WL 4335958, at *8 (3d Cir. Sept. 24, 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*.  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants seek dismissal of the Amended Complaint in its entirety.  Specifically, Defendants argue that: (1) the Charter School lacks standing to sue the District under § 1983; (2) Individual Plaintiffs fail to establish Article III standing for the Title VI claim; and (3) Plaintiffs fail to adequately state claims for equitable relief under the Pennsylvania Constitution.  Defendants' contentions will be addressed in that order.

**A.     The Charter School's Section 1983 Claims**

**1.     The Charter School is a "person" under § 1983.**

The Charter School's First and Fourteenth Amendments claims are brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

At the outset, it is necessary to resolve "whether a charter school can bring suit under § 1983." *Pocono Mountain Charter Sch.*, 442 F. App'x at 686.  As posed by the Third Circuit:

> is the School, as the defendants argued in their Motion to Dismiss, an agent or instrumentality of the state that lacks standing as a § 1983 person? (*i.e.*, under *Monell v. NYC Dept. of Social Serv.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), is the Charter School a "person" within the meaning of

> § 1983?)   If the School qualifies as a § 1983 "person," then is it, like a municipality, barred from bringing suit against its creator or charter-grantor? . . .

*Id.* at 686-87 (footnotes omitted).  In the parties' submissions, little analysis is directed at the issue of whether the Charter school should be considered a "person" under *Monell*.  In *Monell v. NYC Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that Congress "intend[ed] municipalities and other local government units to be included among those persons to who § 1983 applies."  And, the *Monell* Court held that for purposes of § 1983, the term "person" may be applied to "bodies politic and corporate." *Id.* at 688, 98 S. Ct. 2018.  As a result, "[l]ocal governing bodies, therefore, can be sued directly under § 1983 . . . ." *Id.*

Following *Monell*, courts have recognized that the word "person" in § 1983 "includes municipalities and other local governing bodies such as school districts." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *see also Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) ("Municipal entities, including school districts, are 'persons' within the meaning of § 1983 and therefore subject to suit under that provision."); *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 610 (7th Cir. 2007) ("school district can be liable under § 1983"); *McGreevy v. Stroup*, 413 F.3d 359, 367-69 (3d Cir. 2005) (school district may be liable under *Monell*); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001) (plaintiff, "under § 1983, . . . may sue a local governing body, such as the school district, . . . if the challenged action implements or executes a policy officially adopted by that body's officers.").

Applying *Monell* and its progeny, district courts in the Third Circuit have found charter schools amenable to suit under § 1983. *See Knaub v. Tulli*, 788 F. Supp. 2d 349 (M.D. Pa. 2011) (terminated teacher's First Amendment retaliation claim brought pursuant to § 1983 against public cyber charter school stated a claim upon which relief could be granted); *Irene*

*B. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 WL 24052009 (M.D. Pa. Jan. 29, 2003) (plaintiffs' § 1983 claims against charter school for violation of the Individual with Disabilities Education Act and the Rehabilitation Act stated a claim for which relief could be granted); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) ("Because the Academy is a public charter school, principles of municipal liability apply"); *Scaggs v. New York State Dep't of Educ.*, No. 06-CV-0799, 2007 WL 1456221, *13 (E.D.N.Y. 2007) ("claims addressing the nature and quality of education received at charter schools may be properly brought against such schools and their management companies under Section 1983").

Pursuant to this line of cases, the District, as well as the Charter School, both qualify as a "person" subject to suit under § 1983. This conclusion, however, does not establish that the Charter School is a "person" that may *bring* suit under § 1983, as "[t]he term 'person' appears twice in the statute, one relating to proper plaintiffs under the statute, the other relating to proper defendants." *S. Macomb Disposal Auth. v. Twp. of Washington*, 790 F.2d 500, 502 (6th Cir. 1986).

In light of the use of the term "person" twice in the statute, some courts have stated, post-*Monell*, that while a municipality may be sued under § 1983, it may not bring an action pursuant to § 1983. *See, e.g., Rockford Bd. of Educ., Sch. Dist. No. 205 v. Ill. State Bd. of Educ.*, 150 F.3d 686, 688 (7th Cir. 1998) (noting that "a city or other municipality cannot bring a suit under 42 U.S.C. § 1983"); *Randolph Cnty. v. Ala. Power Co.*, 798 F.2d 425, 425–26 (11th Cir. 1986) (stating that "we have subsequent to *Monell* continued to hold that a municipality has no cause of action under section 1983"). Other courts, however, have found municipalities to be "persons" capable of bringing claims under § 1983. *See, e.g., Rural Water Dist. No. 1, Ellsworth Cnty., Kan. v. City of Wilson, Kan.*, 243 F.3d 1263, 1274 (10th Cir. 2001); *S. Macomb Disposal Auth. v. Twp. of Washington*, 790 F.2d 500, 503 (6th

10

Cir. 1986) (""in light of *Monell*, it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of section 1983, but not a 'person' within another clause of that same statute."). Applying this logic, one district court has found that "those that are subject to liability under Section 1983 should also have standing as plaintiffs." *Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cnty.*, 477 F. Supp. 2d 1246, 1251 (S.D. Fla. 2007) (citing *Citizens Against Tax Waste v. Westerville City School Dist. Bd. of Ed.*, 985 F.2d 255 (6th Cir. 1993); *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982)). Nevertheless, there is case law in this Circuit to the effect that a school district is not a proper plaintiff in a § 1983 action. *See, e.g., Sch. Dist. of Phila. v. Pa. Milk Mktg. Bd.*, 877 F. Supp. 245, 248 (E.D. Pa. 1995) ("the school district does not have standing to sue under § 1983 because it is not a 'person' that can sue (as opposed to be sued) within the meaning of the statute").

Notwithstanding *Milk Marketing Board*, I believe the Charter School is properly considered a "person" able to bring suit under § 1983. First, the Charter School, consistent with the Charter School Law, is organized as a public, nonprofit corporation. *See* 24 Pa. Stat. Ann. § 17-1703-A. (*Am. Compl.*, ¶ 5.) And, a corporation is a "person" "within the meaning of § 1983 to constitute a proper plaintiff." *S. Macomb Disposal Auth.*, 790 F.2d at 503; *see also Azer v. Connell*, 306 F.3d 930, 935 (9th Cir. 2002) ("Suits under 42 U.S.C. § 1983 by corporate plaintiffs are permissible"); *Colon Rodriguez v. Lopez Bonilla*, 344 F. Supp. 2d 333, 338 (D. P.R. 2004) (" It is well established that corporations are 'persons' within the meaning of the Equal Protection and Due Process clauses and Section 1983."). Second, as Pennsylvania charter schools have been subject to suit under § 1983 (and are proper "persons" as defendants in those cases), it seemingly follows that charter schools should also be considered "persons" with the ability to bring suit due to the general presumption that "'identical words used in different parts of the same act are intended to

have the same meaning.'" *United States v. Cleveland Indians Baseball Co.*, 532 U.S., 213,

121 S. Ct. 1433, 149 L. Ed. 2d 401 (2001) (*quoting Atl. Cleaners & Dyers, Inc. v. United

States*, 286 U.S. 427, 433, 52 S. Ct. 607, 76 L. Ed. 1204 (1932)).

### 2.   The charter school-school district relationship.

Since the Charter School qualifies as a § 1983 "person," the issue becomes whether

it is "like a municipality, barred from bringing suit against its creator or charter-grantor."

*Pocono Mountain Charter Sch.*, 442 F. App'x at 687.  The Third Circuit instructed that:

> In addressing whether the Charter School can bring a § 1983 suit against the state, the District Court should also consider how *Williams v. Mayor & City Council*, 289 U.S. 36, 53 S. Ct. 431, 77 L. Ed. 1015 (1933), and *Coleman v. Miller*, 307 U.S. 433, 441, 59 S. Ct. 972, 83 L. Ed. 1385 (1939), which stand for the proposition that a municipal corporation cannot sue the state, and *Washington v. Seattle School District No. 1*, 458 U.S. 457, 102 S. Ct. 3187, 73 L. Ed. 2d 896 (1982), which suggests that a school district can bring a § 1983 suit against the state, bear on this question.  Is a Charter School sufficiently analogous to a municipality that it should, under the *Williams* and *Coleman* line of cases, be barred from suing the state?  If a charter school is sufficiently analogous to a municipality that the *Williams* and *Coleman* line of cases preclude it from asserting a § 1983 claim under the contract clause or the Fourteenth Amendment, does that rule extend to a cause of action alleging a violation of the First Amendment?  Further, is it significant that the claim in *Washington* was for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment while the claims in *Williams* and *Coleman* were not?  How does *Washington* bear on the question of whether a charter school can sue the school district/the state?  Does *Washington* set down a binding rule that a school district can sue the state?  If so, does that rule apply to a charter school, also permitting it to sue the state, or is a public school district's relationship with the state sufficiently distinguishable from a charter school's relationship with the school district and the state so as to merit a different rule?

*Id*.  Essentially, this analysis requires consideration of the Charter School's relationship with

the School District, and, thus, the Commonwealth, as well as the above referenced

Supreme Court decisions. *See id*. at 687-88.

### a.   The Charter School Law

The preliminary provisions of the Charter School Law provide that "it is the intent of

the General Assembly, in enacting this article, to provide opportunities for teachers, parents,

pupils and community members to establish and maintain schools that operate

independently from the existing school district structure . . . ." 24 Pa. Stat. Ann. § 17-1702-

A.  Under the Charter School Law, a "charter school" is an:

> independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend. A charter school must be organized as a public, nonprofit corporation. Charters may not be granted to any for-profit entity.

24 Pa. Stat. Ann. § 17-1703-A.  A charter school may be established:

> by an individual; one or more teachers who will teach at the proposed charter school; parents or guardians of students who will attend the charter school; any nonsectarian college, university or museum located in this Commonwealth; any nonsectarian corporation not-for-profit, as defined in 15 Pa.C.S. (relating to corporations and unincorporated associations); any corporation, association, partnership; or any combination thereof. A charter school may be established by creating a new school or by converting an existing public school or a portion of an existing public school. No charter school shall be established or funded by and no charter shall be granted to any sectarian school, institution or other entity.

24 Pa. Stat. Ann. § 17-1717-A(a).

A charter school formed under the Charter School Law "is a body corporate and shall

have all powers necessary or desirable for carrying out its charter." 24 Pa. Stat. Ann. § 17-

1714-A.  The powers specifically set forth in the Charter School Law include the power to:

"sue and be sued, but only to the same extent and upon the same condition that political

subdivisions and local agencies can be sued"; "acquire real property . . ."; "receive and

disburse funds for charter school purposes only"; "make contracts and leases for the

procurement of services, equipment, and supplies"; "incur temporary debts in anticipation

of the receipt of funds"; and "solicit and accept any gifts or grants for charter school

purposes." *Id*.  Moreover, "a charter school shall have such other powers as are necessary

to fulfill its charter and which are not inconsistent with this article." *Id*.

The Charter School Law provides that:

> Except as otherwise provided in this article, a charter school is exempt from statutory requirements established in this act, from regulations of the State board and the standards of the secretary not specifically applicable to charter schools. Charter schools are not exempt from statutes applicable to public schools other than this act.

13

24 Pa. Stat. Ann. § 17-1715-A.  The Charter School Law, however, dictates that a charter school: be nonsectarian in all operations; refrain from discrimination; participate in the Pennsylvania State Assessment System; and provide a minimum amount of instruction. *See id*.  A charter school's board of trustees:

> shall have the authority to decide matters related to the operation of the school, including, but not limited to, budgeting, curriculum and operating procedures, subject to the school's charter. The board shall have the authority to employ, discharge and contract with necessary professional and nonprofessional employees subject to the school's charter and the provisions of this article.

24 Pa. Stat. Ann. § 17-1716-A.  As such, "the board of trustees shall determine the level of compensation and all terms and conditions of employment of the staff except as may otherwise be provided in this article." 24 Pa. Stat. Ann. § 17-1724-A.

A charter school may not charge tuition for a resident or nonresident student attending the school. *See* 24 Pa. Stat. Ann. § 17-1725-A(a)(1).  Instead, a charter school shall receive funds from the district of residence of each student. *See* 24 Pa. Stat. Ann. § 17-1725-A(a)(2), (3).

The Charter School Law also requires the school district to provide transportation to students in certain circumstances depending on the location of the charter school and the distance to the charter school from the student's residence. *See* 24 Pa. Stat. Ann. § 17-1726-A(a).

The local school board of directors must annually assess whether each charter school is meeting its required goals. *See* 24 Pa. Stat. Ann. § 17-1728-A(a).  Thus, "the local board of school directors shall have ongoing access to the records and facilities of the charter school to ensure that the charter school is in compliance with its charter and this act and that requirements for testing, civil rights and student health and safety are being met." *Id*.

Lastly, "during the term of the charter or at the end of the term of the charter, the

local school board of directors may choose to revoke or not to renew the charter based on any of the following:" (1) material violations of the written charter; (2) failure to meet student performance requirements; (3) failure to meet fiscal management standards; (4) violations of the Charter School Law; and (5) violations of other applicable laws. *See* 24 Pa. Stat. Ann. § 17-1729-A.

The Pennsylvania courts, on occasion, have had the opportunity to examine the relationship between charter schools and local school districts under the Charter School Law.  For example, in *W. Chester Area Sch. Dist. v. Collegium Charter Sch.*, 571 Pa. 503, 597, 812 A.2d 1172, 1174 (2002), the Pennsylvania Supreme Court addressed a number of issues "regarding the proper interpretation of the Charter School Law."  One issue analyzed was whether a district board may impose restrictive conditions upon a charter granted by the Appeal Board.  The Court found that "[a]lthough the CSL implicitly recognizes that conditions may be placed on the grant of a charter, such conditions must be consistent with the statutory provisions.  To hold to the contrary would defeat the CSL's stated purpose to operate charter schools independently and free from excessive regulation." *Id*. 571 at 520-21, 812 A.2d at 1182.

In *Foreman v. Chester-Upland Sch. Dist.*, 941 A.2d 108, 114-15 (Pa. Cmwlth. 2008), the Pennsylvania Commonwealth Court also examined the relationship between charter schools and school districts under the Charter School Law.  According to the Commonwealth Court:

> The relationship between a local school district and a charter school is set forth in the Charter School Law.  In enacting that law, the General Assembly stated that its intent in authorizing the establishment of charter schools was to "provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure."  Section 1702-A of the Charter School Law, 24 P.S. § 17-1702-A.  In carrying out that intent, the Charter School Law sets forth a specific procedure that those seeking a charter school and the school directors must follow.  First, those seeking a charter school must file an application containing detailed information such as the grade or age levels served by the school, the governance structure, its

mission and goal, how students' education progresses and its financial plan. Section 1719-A of the Charter School Law, 24 P.S. § 17-1719-A. Once an application is filed, the school directors are under specific time constraints for the scheduling of public hearings and taking action on the application and are required to approve or deny the application based on criteria listed in the Educational Empowerment Act. If the school directors deny the application, the applicants may appeal to the State Charter School Appeal Board, which based on its own evaluation of the evidence, can grant the charter over the objections of the school district. Section 1721-A of the Charter School Law, 24 P.S. § 17-1721-A. Once the application for the charter is granted, based on the application, a written charter granting the right to establish a charter school for three to five years is prepared subject to reauthorization by the school directors or the State Charter Appeal Board. 24 P.S. § 17-1720-A. The school district is required to pay for the student residing in its district and if it fails to do so, the Secretary of Education is required to deduct the estimated amount from all state payments owed to the school district. Section 1725-A of the Charter School Law, 24 P.S. § 17-1725-A. The monitoring of charter schools is entrusted to local school directors. They are given the authority to terminate or refuse to renew the charter if there are material violations of conditions, standards or procedures in the written charter, failures meet state standards regarding student performance or curriculum or failure to meet generally accepted standards of fiscal management or audit requirements. Section 1729-A of the Charter School Law, 24 P.S. § 17-1729-A.

*Id.*

Thus, based on this statutory scheme, the Commonwealth Court concluded that "the relationship between a school district and a charter school is not contractual, but regulatory: school directors are obligated to issue a charter if the applicant satisfies the criteria set forth in the Charter School Law; . . ." *Id.* at 115. This relationship "is not a contract that 'outsources' public education, but [rather] the establishment of schools to provide students with a public education." In reaching this conclusion, the Commonwealth Court relied on the reasoning of the Pennsylvania Supreme Court in *Zager v. Chester Cmty. Charter Sch.*, 594 Pa. 166, 934 A.2d 1227, 1231 (2007). In *Zager*, the Supreme Court found charter schools to be agencies under Pennsylvania's Right-to-Know Act because they perform "an essential governmental function." *Id.* The Court held that "charter schools, as independent public schools created for the purpose of providing the essential governmental service of education in a constitutionally mandated manner, are necessarily included among the agencies subject to the Right-to-Know Act."

### b.      *Williams*, *Coleman*, and *Seattle School District*

As noted previously, in remanding this action, the Third Circuit instructed that consideration be given to how "*Williams v. Mayor & City Council*, 289 U.S. 36, 53 S. Ct. 431, 77 L. Ed. 1015 (1933), and *Coleman v. Miller*, 307 U.S. 433, 441, 59 S. Ct. 972, 83 L. Ed. 1385 (1939), which stand for the proposition that a municipal corporation cannot sue the state, and *Washington v. Seattle School District No. 1*, 458 U.S. 457, 102 S. Ct. 3187, 73 L. Ed. 2d 896 (1982), which suggests that a school district can bring a § 1983 suit against the state," impact whether the Charter School can sue the District under § 1983.

In *Williams*, the mayor and city council of Baltimore, as well as the mayor, counselor, and aldermen of the City of Annapolis, municipal corporations,[2] challenged the validity of a statutory tax exemption for a particular railroad under both the United States and Maryland Constitutions. *See Williams*, 289 U.S. at 39, 53 S. Ct. 431.  The Supreme Court found error in the holding of the Circuit Court of Appeals that the "exemption is a denial to the respondents of the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States." 289 U.S. at 40, 53 S. Ct. 431.  The Court of Appeals' determination was erroneous, according to the Supreme Court, because of the principle that "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Id*.

In *Coleman*, members of the Kansas Senate and House of Representatives brought a mandamus action "to compel the Secretary of the Senate to erase an endorsement on the resolution" ratifying a proposed amendment to the United States Constitution. *See* 307 U.S. at 435-36, 59 S. Ct. 972.  After the Court granted certiorari, the defendants claimed that the plaintiff petitioners lacked an adequate interest to invoke jurisdiction for review. *See*

---

[2]      A "municipal corporation" is defined as a "city, town, or other local political entity formed by charter from the state having the autonomous authority to administer the state's local affairs; . . ." Black's Law Dictionary 1113 (9th ed. 2009).

307 U.S. at 428, 59 S. Ct. 972.  While recognizing that "municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator," the Court concluded that the "principle that the applicant must show a legal interest in the controversy has been maintained." 307 U.S. at 441, 59 S. Ct. 972.  The Court characterized the action as not presenting a "mere intra-parliamentary controversy," but rather as raising an issue "relate[d] to legislative action deriving its force solely from the provisions of the Federal Constitution." *Id*.

More recently, in *Seattle School District*, three school districts initiated suit in federal court against the State of Washington challenging the constitutionality of Initiative 350 under the Equal Protection Clause of the Fourteenth Amendment. *See* 458 U.S. at 464, 102 S. Ct. 3187.  Initiative 350, which received almost sixty-six percent (66%) of the statewide vote, was essentially directed at preventing desegregative busing in Seattle school districts. *See* 458 U.S. at 463, 102 S. Ct. 3187.  The Supreme Court found Initiative 350 violated the Equal Protection Clause of the Fourteenth Amendment because it used "the racial nature of an issue to define the governmental decisionmaking structure, and thus imposes substantial and unique burdens on racial minorities." 458 U.S. at 470, 102 S. Ct. 3187.  In its reasoning, the Supreme Court noted that "if local school boards operating under a similar statutory structure are considered separate entities for purposes of constitutional adjudication when they make segregative assignment decisions, it is difficult to see why a different analysis should apply when a local board's desegregative policy is at issue." 458 U.S. at 482, 102 S. C.t 3187.

### 3.  The charter school-school district relationship is analogous to the municipal corporation-creator relationship.

Applying the Charter School Law and relevant case law interpreting it, Defendants argue that the relationship between a school district and charter school is analogous to that of a municipal corporation and grantor. (Doc. 37.)  As a result, Defendants contend that the Charter School cannot advance the § 1983 claims in this case in opposition to the will of its

creator.  Defendants assert that charter schools "bear many of the characteristics of a municipal corporation under the control of the State and its creator state entity." Additionally, Defendants argue that charter schools must conform to many general requirements of school districts.

In opposition, the Charter School disagrees with Defendants' claim that it is an instrumentality of the Commonwealth, and that the charter school-municipality relationship is analogous to a municipal corporation-creator relationship.  Rather, Plaintiff asserts that charter schools are private in many respects because:

> Anyone can start a charter school.  No governmental blessing, act, resolution, statute, or ordinance is needed.  The charter school trustees set up their own non-profit corporation, establish their own program, and apply for a charter. If they meet the requirements of the Charter School Law, the district is required to grant the charter.  The trustees are not elected.  They cannot be removed by the District or the public.  The Charter School cannot be voted out of existence.  The taxpayers cannot decide the school should not exist.  A charter school survives based on a private business model.  The school cannot levy taxes.  They are schools of choice.  If the school provides a good education, parents will send their children.  If the education is not provided parents will withdraw and the school will close.  In contrast, political subdivisions do not go out of business.
>
> A charter school may be established by individuals, parents, or guardians, colleges, universities or museums.  The only part that the school district plays is approval of the application (and, in fact, it must approve the application if it meets the standards of the Charter School Law).

(Doc. 38.)

With respect to the Supreme Court's decisions in *Williams*, *Coleman*, and *Seattle School District*, the District contends that courts "have consistently granted standing to state entities to challenge legislation, which is separate from standing to challenge, under the Fourteenth Amendment, the official acts/decisions or 'the will' of the state."  In that regard, Defendants asserts that *Seattle School District* is consistent with *Williams* and *Coleman* because "in all three cases, the Supreme Court granted standing to challenge legislation, not an official act or decision."  The Charter School, however, opines that these cases "should be read with a view to what rights were allegedly impaired by the challenged

governmental action."

Because the relationship between a charter school and a school district is sufficiently analogous to the relationship between a municipality and its creator, the Charter School's § 1983 claims will be dismissed.  Initially, "municipalities are creatures of the state and that the authority of the Legislature over their powers is supreme." *Naylor v. Twp. of Hellam*, 565 Pa. 397, 773 A.2d 770, 773 (2001) (citing *Denbow v. Borough of Leetsdale*, 556 Pa. 567, 729, A.2d 1113, 1118 (1999); *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557 (1933)).  As a result, "[m]unicipal corporations have no inherent powers and may do only those things that the Legislature has expressly or by necessary implication placed within their power to do." *Id*. (citing In *re Gagliardi*, 401 Pa. 141, 163 A.2d 418 (1960)).  And, a school district is "a quasi-municipal corporation, which is an agency of the Commonwealth for the performance of prescribed government functions, being created and maintained for the sole purpose of administering the Commonwealth's system of public education." *Borough of Wilkinsburg v. Sch. Dist. of Wilkinsburg*, 365 Pa. 254, 74 A.2d 138,139 (1950); *Penn-Delco Sch. Dist. v. Schukraft*, 95 Pa. Cmwlth. 619, 506 A.2d 956, 960 (Pa. Cmwlth. 1986).

Like a municipal corporation that operates within the confines of powers granted by the General Assembly, a charter school is granted the limited power to operate an independent public school. *See* 24 Pa. Stat. Ann. § 17-1702-A.  Even though a charter school "has all powers necessary or desirable for carrying out its charter," 24 Pa. Stat. Ann. § 17-1714-A(a), it can only operate "under a charter from the local board of school directors." 24 Pa. Stat. Ann. § 17-1703-A.  Thus, the "legal authorization for the establishment of a charter school" is pursuant to a written charter that must be signed by the local board of school directors. *See* 24 Pa. Stat. Ann. § 17-1720-A(a).  Moreover, a local school board may also revoke or decide not to renew a charter during the term or at the expiration of the charter for a number of reasons, including material violations of the written

charter, failure to meet performance requirements, violations of the Charter School Law, or violations of other applicable laws. *See* 24 Pa. Stat. Ann. § 17-1729-A(a)).  These statutory provisions demonstrate that, despite the independence afforded to a charter school in terms of setting its operating procedures, budget, and curriculum, *see* 24 Pa. Stat. Ann. § 17-1716-A(a), a charter school operates with the authorization of a local school district for the limited purpose of providing an alternate education option to students within the public education system. *See Foreman*, 94 A.2d at 115.  This relationship is analogous to that of a municipal corporation-creator where the powers granted to the municipal corporation are defined and limited by the creator.  The Charter School, therefore, like a municipality or municipal corporation, may not bring this constitutional challenge against its creator in this action. *See, e.g., Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 893 F. Supp. 301, 314 (D. N.J. 1995) ("municipalities may assert claims against the creating state under the Supremacy Clause, but not under other substantive constitutional guarantees."); *Nw. Sch. Dist. v. Pittenger*, 397 F. Supp. 975, 979 (W.D. Pa. 1975) ("a municipal corporation created by a State for the better ordering of government has no rights under the United States Constitution which it may invoke in opposition to the will of its creator").

　　　　Finding the relationship between a charter school and school district is analogous to that between a municipal corporation and its creator is also consistent with the Pennsylvania Supreme Court's decision in *Zager*.  As noted, the *Zager* Court found charter schools to be "agencies" subject to the requirements of Pennsylvania's Right-to-Know Act. *See Zager*, 594 Pa. 166, 934 A.2d 1227.  In that regard, the Pennsylvania Supreme Court expressly recognized that charter schools are "independent public schools created for the purpose of providing the essential governmental service of education in a constitutionally mandated manner." 594 Pa. at 174, 934 A.2d at 1222.  The Court's holding suggests that

charter schools are instrumentalities of the Commonwealth, and, therefore, analogous to municipal corporations, as they provide an essential government function pursuant to a charter from the local school board.

Also supporting dismissal of the Charter School's § 1983 claims are the nature of the constitutional violations raised in this action.   In particular, courts that have allowed a municipality or municipal corporation to assert claims against its creator have generally permitted claims only for violations of the Supremacy Clause. *See, e.g., Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 629 (10th Cir. 1998) ("school district plaintiffs have the power to bring their federal claims against the state under the Supremacy Clause"); *Rogers v. Brockette*, 588 F.2d 1057, 1070-71 (5th Cir. 1979) (permitting plaintiff school district to challenge state law as inconsistent with federal law in violation of the Supremacy Clause); *see also S. Macomb Disposal Auth. v. Washington Twp.*, 790 F.2d 500, 504-05 (6thd Cir. 1986) (suggesting Supremacy Clause claims allowed); *United States v. Alabama*, 791 F.2d 1450 (11th Cir. 1986) (same).   The Charter School, however, does not raise such a claim.

The Charter School's capacity to sue the District, and, thus, the Commonwealth, is also not altered by the Supreme Court's decision in *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 102 S. Ct. 3187, 73 L. Ed. 2d 896 (1982).   First, while the Supreme Court upheld the school district's contention that Initiative 350 violated the Equal Protection Clause, "the Court did not expressly address the question of standing, and thus did not directly consider whether the school district, unquestionably a political subdivision of the state, had standing to bring the action in the first place." *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998).   Thus, because "the Supreme Court has 'repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect,'" *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 266 (3d Cir. 2009) (citations omitted), "*Seattle School District* does not constitute binding authority

with respect to standing." *Burbank*, 136 F.3d at 1363; *but see Indian Oasis-Baboquivari Unified Sch. Dist. v. Kirk*, 91 F.3d 1240, 1247 (9th Cir. 1996) (Reinhardt, J., dissenting) ("Although the [*Seattle School District*] Court does not squarely hold that the school districts have standing to sue the state, it in no way passed over the issue *sub silentio*.").

Moreover, as articulated by the Eleventh Circuit, the *Seattle School District* decision can be harmonized with the general rule that a creature of the state normally has no Fourteenth Amendment rights against its creator. *See United States v. Alabama*, 791 F.2d 1450, 1456 n.5 (11th Cir. 1986). According to the Eleventh Circuit, the *Williams* line of cases:

> "adhere to the substantive principle that the Constitution does not interfere with a state's internal political organization." But *Seattle School District* does not trench on a state's political prerogatives. It simply holds that once a state's political organization is in place, the state may only re-organize that structure (such as a state's delegation of certain educational decision-making powers to local school boards) consistently with the constitutional guarantee of equal protection.

*Id*. (internal citations omitted). Consistent with this understanding of *Seattle School District*, the General Assembly has merely put in place the Commonwealth's educational system which permits the creation of charter schools. The Commonwealth, however, has not subsequently attempted to re-organize the educational system or alter "the State's educational decisionmaking process," which, under *Seattle School District*, would require the reorganization to comport with the Fourteenth Amendment. *Seattle School Dist.*, 458 U.S. at 479, 102 S. Ct. 3187. Unlike the claims in *Seattle School District*, the claims advanced in this litigation seek to interfere with the Commonwealth's internal political organization, and are not predicated on the Commonwealth's reorganization of its educational system. Thus, because a creature of the state generally has no Fourteenth Amendment rights against its creator, and *Seattle School District* does not establish a binding rule that a school district can sue the state, the Charter School's § 1983 claims fail

23

to state a claim upon which relief can be granted.[3]  Accordingly, the § 1983 claims will be dismissed with prejudice.

### 4.      The Pennsylvania appellate court cases cited by the Charter School do not compel a different result.

Lastly, it is necessary to note that the authority relied on by the Charter School in its argument that "Pennsylvania's appellate courts have consistently held that School Districts and Charter Schools have standing under Section 1983" simply do not support the proposition advanced by Plaintiffs.  Indeed, in the four cases cited by the Charter School- *Harrisburg Sch. Dist. v. Commonwealth*, 762 A.2d 398 (Pa. Cmwlth. 2000), *Warren v. Ridge*, 762 A.2d 1126 (Pa. Cmwlth. 2000), *Harrisburg Sch. Dist. v. Hickok*, 781 A.2d 221 (Pa. Cmwlth. 2001), and *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 975 A.2d 1221 (Pa. Cmwlth. 2009)- none address whether a school district has standing to sue the Commonwealth under § 1983.

For example, in *Harrisburg Sch. Dist. v. Commonwealth*, the Commonwealth Court addressed the defendants' preliminary objections to the plaintiff school district's challenge to the constitutionality of the Education Empowerment Act.  *See* 762 A.2d at 400.  The Commonwealth Court found that the school district had "a substantial, direct, and immediate interest in the outcome of this matter." *Id*. at 404.  Similarly, in *Hickok*, the school district challenged the constitutionality of an amendment to the Education Empowerment Act.  *See* 781 A.2d at 223.  Again, the Commonwealth Court found the school district had standing

---

[3]      The general rule barring a municipality from asserting a § 1983 claim under the Fourteenth Amendment is equally applicable to claims under the First Amendment. *See, e.g., Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1085-88 (D. Idaho 2010) (dismissing political subdivision's § 1983 claim for violation of the First Amendment Establishment Clause because the plaintiff had no privileges or immunities it could invoke against the state); *see also City of Alpine v. Abbot*, 730 F.2d 630, 634 (W.D. Tex. 2010) ("Plaintiffs have not cited a single case- and the Court is aware of none- that holds that the freedom of speech applies to the political subdivision of a state").

to challenge the constitutionality of the Act. *See id*. at 226 n.3.  And, in *Warren*, taxpayers, teachers, and parents of students were deemed to have standing to challenge the constitutionality of the Education Empowerment Act under the Equal Protection Clause of both the Pennsylvania Constitution, Article I, Section 26, and the Fourteenth Amendment of the United States Constitution. *See* 762 A.2d at 1133.  These cases, however, did not address the issue of whether a school district may bring an action against the Commonwealth under § 1983.

Lastly, in *Slippery Rock*, the Commonwealth Court addressed "whether a local school district is obligated to fund educational programs offered by charter schools which the district has exercised its discretion not to offer in its own public schools." 975 A.2d at 1221-22.  As to the issue of standing, the Commonwealth Court rejected the charter school's claim that the school district lacked standing to raise the claim that it was not obligated to provide the funding because the school district had a direct, substantial, and immediate interest in the issue. *See id*. at 1223 n.2.[4]  Like the other cases cited by the Charter School, however, *Slippery Rock* did not address the issue of whether a school district or charter school has standing to sue the Commonwealth under § 1983.

Accordingly, for the aforementioned reasons, the Charter School is sufficiently analogous to a municipal corporation to preclude it from asserting its § 1983 claims against the District in this case.  The Charter School's § 1983 claims, Counts II-IV of the Amended Complaint, will therefore be dismissed with prejudice.

---

[4]     The decision of the Commonwealth Court was subsequently appealed to the Pennsylvania Supreme Court. *See* 31 A.3d 657.  The Pennsylvania Supreme Court reversed the order of the Commonwealth Court, holding that "when faced with such a conflict [regarding funding], . . . the cyber charter school is bound by the policy of the school district in which the student resides." *Id*. at 666.

**B.      Individual Plaintiffs' Title VI Claim**

In Count I of the Amended Complaint, Individual Plaintiffs assert a claim for violation of Title VI of the Civil Rights Act of 1964. (*Am. Compl.*, ¶ 95.)  Individual Plaintiffs allege that they have been unlawfully discriminated against on the basis of race and national origin. (*Id.*)  Section 601 of Title VI of the Civil Rights of 1964 provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000(d).  "The statute implies a private right of action for victims of intentional discrimination, which is prohibited by Section 601 of Title VI." *Powell v. DeCarlo*, No. 12-762, 2012 WL 3104839, at *3 (E.D. Pa. July 31, 2012) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279–80, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001); *Barnes v. Gorman*, 536 U.S. 181, 185, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002)).  The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance. *See Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993); *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 273 (W.D. Pa. 2008).

In dismissing the initial complaint, it was noted that Individual Plaintiffs failed to allege any facts showing how the allegedly discriminatory conditions imposed on the Charter School served to discriminate against its students.  The Third Circuit concluded that the complaint failed to adequately state a claim under Title VI, but instructed that Individual Plaintiffs be granted leave to amend the Title VI claim.  On remand, Defendants argue that the Amended Complaint fails to sufficiently allege the "injury in fact" requirement for Article III standing. (Doc. 37.)  Specifically, Defendants argue that Individual Plaintiffs have no legally protected interest in attending the school of their choice, and, thus, have failed to adequately allege an "injury in fact."  Individual Plaintiffs, however, contend that the District

misconstrues the basis of their Title VI claim.   Rather, they argue that the District's

discriminatory efforts to close the Charter School threatens Individual Plaintiffs with actual

harm.  I agree with Individual Plaintiffs that the Title VI claim contains sufficient allegations

to withstand a motion to dismiss.

> Article III standing requires:
>
> (1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McCrary v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 244 (3d Cir. 2012) (quoting *Danvers*

*Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005)).  As noted by the

Third Circuit, "courts have upheld standing for plaintiffs who are not the direct targets of

discrimination." *Pocono Mountain Charter Sch.*, 442 F. App'x at 689 n.11 (citing *Clemes v.*

*Del Norte Cnty. Unified Sch. Dist.*, 843 F. Supp. 583 (N.D. Cal. 1994)); *see also Small v.*

*Feather River Coll.*, No. 10-CV-3026, 2011 WL 1670236, at *8 (E.D. Cal. May 3, 2011).

Here, contrary to Defendants' argument, the legally protected interest claimed with

respect to the Title VI claim is not Individual Plaintiffs' right to attend the school of their

choosing.  Rather, Individual Plaintiffs allege an invasion of a legally protected interest to

be free from race and national origin discrimination protected by Title VI of the Civil Rights

Act of 1964.  "There is no doubt that Title VI creates a legal protection against discrimination

based on national origin [or race] or that plaintiffs are, through this lawsuit, invoking the

substantive right against discrimination created by Title VI." *Almendares v. Palmer*, 222

F.R.D. 324, 329 (N.D. Ohio 2004).  Moreover, as Individual Plaintiffs allege that Defendants'

discriminatory efforts will cause concrete and particularized economic harm to Individual

Plaintiffs, and this harm is imminent based on the District's attempts to revoke the Charter

School's charter, Plaintiffs have alleged an "injury in fact" to satisfy Article III standing.  And,

as Defendants raise no other challenges to the sufficiency of the Title VI claim, Individual

Plaintiffs will be permitted to proceed with this cause of action.

**C.      Plaintiffs' Pennsylvania Constitution Claims**

Plaintiffs lastly assert claims for injunctive relief under Article I, Sections 3 and 26 of

the Pennsylvania Constitution.

**1.      Plaintiffs fail to state a claim under Article I, Section 3.**

Article I, Section 3 of the Pennsylvania Constitution states:

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Pa. Const. Art. I, § 3.

Defendants raise a number of arguments with respect to the deficiencies in Count

V of the Amended Complaint.  In particular, Defendants argue that the "Charter School

lacks standing to raise a constitutional claim of the members of the Church." (Doc. 37.)  The

Charter School, in opposition to Defendants' motion to dismiss Count V of the Amended

Complaint, asserts:

The District fails to understand the gravamen of Plaintiff's constitutional claims. The Charter School does not argue that it wishes to be affiliated with a church. Rather, the Charter School Plaintiff argues that *persons of a certain religious background are prohibited from being affiliated with the Charter School, merely because of their affiliation*.  The District has imposed a charter on Plaintiff which *impedes the ability of <u>charter school trustees </u>to worship as they please.*

(Doc. 38 (emphasis added).)

Count V, in its entirety, alleges:

Defendants have intentionally, purposefully, and with deliberate indifference violated the Pennsylvania Constitution, Article I, § 3, *by acting to control and interfere with the natural and indefeasible right of <u>the officers of the Pocono Mountain Charter School</u> to worship according to the dictates of their own conscience*.

(*Am. Compl.*, ¶ 99 (emphasis added).)

28

Here, Plaintiffs fail to state a claim under Count V.   First, Count V does not allege that Plaintiffs rights have been violated by Defendants, or that Individual Plaintiffs's ability to worship as they please has been impeded.   Instead, Count V expressly alleges that the officers of the Charter School, individuals that are not plaintiffs in this action,[5] have been denied the chance to worship as they desire.[6]  In that regard, the Amended Complaint and the Charter School's brief in opposition to the motion to dismiss both seemingly claim third-party standing on behalf of the Charter School's officers or trustees.

Federal courts "adhere to a prudential rule that 'ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party.'" *Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000) (quoting  *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976)); *see also Harrisburg Sch. Dist. v. Harrisburg Educ. Ass'n*, 32 Pa. Cmwlth. 348, 379 A.2d 893, 896 (Pa. Cmwlth. 1977) (adopting the *Singleton v. Wulff* rule for "standing to assert third party constitutional rights").  However:

> a narrow exception to the prohibition on third party standing [exists], provided three criteria are satisfied. First, the plaintiff must have suffered an actual injury, although not necessarily one to its own legally protected interests. *See Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 1370–71, 113 L. Ed. 2d 411 (1991). Second, the plaintiff must have a close enough relationship with the party whose rights he or she is asserting, "thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute" and ensuring that the plaintiff will be an effective advocate. *Id*. Third, "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id*.

*Pitt News*, 215 F.3d at 362.

In this case, the Charter School fails to satisfy the third criterion because it has not demonstrated that its trustees or officers have any impediment to brining their own suit to

---

[5]     As set forth above, Plaintiffs in this action are "the Pocono Mountain Charter School, students in the Charter School and their parents, on behalf of a class of students in the School." (*Am. Compl.*, ¶ 1.)

[6]     Other allegations regarding the opportunity to worship freely do not involve Plaintiffs, but also relate to the Charter School's trustees. (*Am. Compl.*, ¶¶ 54, 83.)

vindicate their own constitutional rights.  The Charter School has not suggested that its officers or trustees are somehow unable to assert their rights, nor has it argued that the circumstances of this case somehow create a barrier to suit.  Instead, the Charter School has simply argued that the charter "impedes the ability of charter school trustees to worship as they please." (Doc. 38.)  Thus, because the Charter School does not have third party standing to litigate the claim raised in Count V on behalf of its trustees, Plaintiffs' claim under Article I, Section 3 of the Pennsylvania Constitution will be dismissed.

### 2.    Plaintiffs adequately state a claim under Article I, Section 26.

Article I, Section 26 provides: "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. Art. I, § 26.  While no Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution, *see Pocono Mountain Charter Sch.*, 442 F. App'x at 687, "individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution." *Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320-21 (M.D. Pa. 2006) (citing *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 629 (E.D. Pa. 2006)).

Plaintiffs' equal protection claim under Article I, Section 26 of the Pennsylvania Constitution, *see Meggett v. Pa. Dep't of Corr.*, 892 A.2d 872, 879 n.12 (Pa. Cmwlth. 2006) ("Pennsylvania's equal protection provision is set forth in Article I, Section 26 of the Pennsylvania Constitution"), is analyzed the same as claims made pursuant to the Fourteenth Amendment of the United States Constitution. *See Kramer v. Workers' Comp. Appeal Bd.*, 584 Pa. 309, 883 A.2d 518, 532 (Pa. 2005).  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  This provision

embodies the general rule that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

Under the Pennsylvania Constitution, the right to public education and the right to religious freedom are both fundamental rights. *See, e.g., Meggett*, 892 A.2d at 878 ("fundamental rights [include] freedom of religion;); *Pa. Human Relations Comm'n v. Sch. Dist. of Phila.*, 681 A.2d 1366, 1380 (Pa. Cmwlth. 1996) ("public education is a fundamental right, defined also as a civil right that may not be denied to any person on the basis of race within the Commonwealth"). In this case, Plaintiffs allege that Defendants have treated them differently than similarly situated students and a similarly situated charter school, Evergreen, simply on account of race (*Am. Compl.*, ¶¶ 20, 23, 35, 45, 83), national origin (*Id*. at ¶¶ 35, 45), and/ or religious affiliation.(*Id*. at ¶ 83.) As such, Plaintiffs have sufficiently stated a claim under Article I, Section 26 of the Pennsylvania Constitution. Defendants' motion to dismiss Count VI of the Amended Complaint will therefore be denied.

## IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part. The Charter School's § 1983 claims, Counts II-IV, and Plaintiffs' claim under Article I, Section 3 of the Pennsylvania Constitution, Count V, will be dismissed. However, Plaintiffs may proceed with their Title VI claim, Count I, and with their claim under Article I, Section 26 of the Pennsylvania Constitution, Count VI.

An appropriate order follows.


November 8, 2012                                    /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                                   United States District Judge